# United States District Court
## Eastern District of California

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **VARENCKA IVONNE MELCHOR** | **DOCKET NUMBER:** 6:22-MJ-00014-HBK |

I, **Jacob Blade,** Law Enforcement Park Ranger, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In Yosemite National Park, in the Eastern District of California, **Varencka Ivonne MELCHOR** did or was:

**Count 1:** Operating or being in actual physical control of a motor vehicle while under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation in violation of Title 36 Code of Federal Regulations § 4.23(a)(1)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 2:** Operating or being in actual physical control of a motor vehicle while the alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath in violation of Title 36 Code of Federal Regulations § 4.23(a)(2)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 3:** Present in a park area while under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources in violation of Title 36 Code of Federal Regulations § 2.35(c)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 4:** Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in violation of Title 36 Code of Federal Regulations § 4.14(b)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

I further state I am a commissioned Law Enforcement Officer with the National Park Service. This complaint is based on the following facts and information observed by me and or provided to me by other National Park Service Law Enforcement Rangers.

Speedy Trial Act Applies: **No**

U.S. v. **MELCHOR**
Criminal Complaint

On September 4, 2022, at approximately 1840 hours I received a report from the Yosemite National Park Emergency Communications Center that a "drunk guest hit someone." It was reported that an unidentified female aggressor driving a black, Honda sedan was possibly outside of the Housekeeping Camp front desk office. It was reported that the incident was possibly a motor vehicle accident.

When I arrived at the Housekeeping Camp front desk office, I observed a black, Honda Insight (CA tag# 8YMS678) stopped in the Housekeeping Camp parking lot with the engine running, partially obstructing the path of travel to the east side of the Housekeeping Camp loop. I contacted Abigail SISK, an Aramark employee on duty at Housekeeping Camp, who stated that she observed a female subject later identified as Varencka Ivonne MELCHOR, exit the driver seat of the Honda Insight. SISK stated that MELCHOR appeared to be intoxicated.

I contacted MELCHOR, who stated that the driver of a silver Nissan Frontier (CA tag# 77206B2) "backed into me." MELCHOR stated that she was "on my way out" and refused to elaborate further. When I asked MELCHOR to explain the course of events, she told me to "ask them" and pointed to the Nissan Frontier. MELCHOR began moving her mouth while making a stuttering sound but did not speak any words. MELCHOR stuck her tongue out of her mouth and made an incomprehensible sound. MELCHOR told me to "ask them" two more times. MELCHOR's speech was slurred, was speaking in incomplete sentences, and stuttering her words.

I asked MELCHOR to provide identification. MELCHOR hesitated to provide identification and I explained that I needed to do a motor vehicle crash report. MELCHOR stated "well, before we do that" and began walking toward the driver door of her vehicle. I told MELCHOR not to enter the vehicle. I asked MELCHOR how many alcoholic beverages she had consumed. MELCHOR stated, "umm, barely." I asked MELCHOR "barely what?" MELCHOR took a step toward me, and I instructed her to stop walking toward me. I instructed MELCHOR to sit on a large stump nearby. MELCHOR stated that she would "have a seat way over there" and began quickly walking away from the scene toward the 500 block of Housekeeping Camp. I instructed MELCHOR again to sit on the stump. MELCHOR stopped walking but remained standing with her arms crossed. I instructed MELCHOR to sit a third time and she did not. I instructed MELCHOR to sit two more times. MELCHOR sat on the stump after officer SULLENS also asked two times. I could smell a strong odor of alcoholic beverage emanating from MELCHOR's person.

MELCHOR sat on the stump for less than two minutes before she stood up and started walking toward her vehicle. Officer SULLENS stood between the door of the vehicle and MELCHOR. We told MELCHOR that she could not enter the vehicle. MELCHOR stated that she had a broken hand and stated, "if you fuck me up, it would be even better." MELCHOR attempted to push past officer SULLENS and myself several times. MELCHOR reached for the door handle and was ordered to stop. MELCHOR raised her voice and stated that she was "not getting in the car" and

that she was "just going to get something." MELCHOR pointed to the Nissan Frontier and exclaimed, "you guys will pay."

I attempted to get MELCHOR's name, and she refused to speak to me. I requested a law enforcement supervisor to the scene who had to be called out from home.

I contacted D.K. who stated that he was the driver of the Nissan Frontier. D.K. stated that he was parked at the Housekeeping Camp front desk office parking area attempting to back out of a parking space. D.K. stated that his vehicle was stationary, and he was waiting to reverse when MELCHOR driving the black, Honda Insight drove her vehicle into his. One of the passengers in D.K.'s vehicle took cell phone video of the events leading up to them calling 911. While I was speaking with D.K., MELCHOR began yelling incoherently.

Officer SULLENS and officer HESSE accompanied MELCHOR while we attempted to wait for a law enforcement supervisor to arrive on scene. Officer HESSE requested that MELCHOR perform standardized field sobriety testing, to which MELCHOR did not agree. Officer HESSE was able to obtain MELCHOR's driver license. MELCHOR stood up against the order of officer HESSE and officer SULLENS and was placed into handcuffs. While MELCHOR was being handcuffed, she asked me to turn off her car, which had the engine running. I clarified that I had her permission to enter her vehicle to turn the engine off. MELCHOR stated, "yeah turn it off." I opened the driver door of the vehicle and reached in to turn off the engine. I immediately recognized a bottle of Evan Williams Kentucky Bourbon that was partially full on the driver seat of the vehicle. I could smell the odor of burned marijuana inside the vehicle.

MELCHOR was placed in the rear passenger compartment of a patrol vehicle.

Law enforcement supervisor HASTINGS arrived on scene at approximately 1915 hours.

Officer HESSE and I performed a Carroll Doctrine search of MELCHOR's vehicle. I observed an open container of Evan Williams Kentucky Bourbon on the driver seat, multiple empty containers containing trace amounts of green leafy substance consistent with marijuana in the front passenger side door pocket, and a large glass pipe containing residue consistent with burned marijuana in the glove compartment.

MELCHOR consented to, and willingly provided a breath sample. She was advised of her right to refuse the sample and the consequences of that choice. MELCHOR's breath alcohol concentration was measured on an Alcotest 7510 – Alcohol Analyzer (SN: ARBF-0065). MELCHOR was observed for 15 minutes before the test was administered.

The first breath sample was obtained from MELCHOR at 1942 hours. Officer HASTINGS operated the Alcotest 7510 according to protocol and obtained a breath alcohol concentration (BrAC) reading of 0.32 g/210L or 0.32 grams of alcohol per 210 liters of breath.

Speedy Trial Act Applies: **No**                                                                  U.S. v. **MELCHOR**
                                                                                                   Criminal Complaint

The second breath sample was obtained from MELCHOR at 1945 hours. Officer HASTINGS operated the Alcotest 7510 according to protocol and obtained a breath alcohol concentration (BrAC) reading of 0.31 g/210L or 0.31 grams of alcohol per 210 liters of breath.

MELCHOR was observed by credible witnesses to be operating a motor vehicle. MELCHOR drove her vehicle into a stationary vehicle in a busy parking area with many pedestrians and cyclists walking through the parking lot. MELCHOR was incapable of safe operation of her motor vehicle and damaged property due to being under the influence of alcohol and/or other substances.

MELCHOR was placed under arrest and transported to the Fresno County Detention Center.

I declare under penalty of perjury the information which I have set forth above and on the face of this criminal complaint is true to the best of my knowledge.

| | |
|---|---|
| _9/6/2022_ | /S/ *Jacob Blade* |
| Date | *Ranger: (Jacob Blade)* |
| | Law Enforcement Park Ranger |
| | Yosemite National Park, CA |

Sworn to before me and subscribed in my presence in Yosemite National Park, California.

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 before me this <u>6th day</u> of September, 2022.

Date 09/06/2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE